IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NICOLE R. T.,[1]

                              Plaintiff,

            v.                                    Civil Action No.
                                                  5:20-CV-1015 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

COLLINS & HASSELER, PLLC          LAWRENCE D. HASSELER, ESQ.
225 State Street
Carthage, NY 13619

FOR DEFENDANT

SOCIAL SECURITY ADMIN.            JESSICA RICHARDS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

[1]      In plaintiff's brief, she notes that her surname has changed during the pendency
of the proceedings in this case.  Dkt. No. 13, at 5.  I therefore respectfully direct the
Clerk of Court to update this information on the docket to reflect that change.

DECISION AND ORDER[2]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance ("DIB")

benefits for which she has applied.  For the reasons set forth below, I

conclude that the Commissioner's determination resulted from the

application of proper legal principles and is supported by substantial

evidence.

I.    BACKGROUND

Plaintiff was born in February of 1974, and is currently forty-seven

years of age.  She was forty-three years old on her alleged onset date of

April 28, 2017, and at the time of her application for benefits in May of

2017.  Plaintiff stands five feet and seven inches in height, and weighed

between approximately one hundred and sixty-five and one hundred and

eighty pounds during the relevant time period.  Plaintiff currently lives in an

apartment with one of her daughters and a friend who helps her with

chores.  She has six other children who are adults and live elsewhere.

---

[2]     This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

In terms of education, plaintiff attended school until the eleventh grade, and later obtained her GED.  Plaintiff last worked as a waitress, but when she was working, she typically worked only one day per week when she had childcare for her seven children.  She earns a small amount of income from tallying the amounts on guest checks for her former employer, a task that should consume only about an hour, but which takes her multiple days because she does it only five or ten minutes at a time.

Physically, plaintiff alleges that she suffers from neck pain, numbness in her left arm, and headaches that cause her to vomit.  She has received treatment consisting of pain medication, physical therapy, and multiple surgeries on her cervical spine.  Plaintiff has been treated during the relevant period with Samaritan Medical Practice, Dr. Mohammad Abdul Moid Khan, Dr. Serge Rasskazoff, Dr. James Stillerman, Dr. Mohain Ali, and nurse practitioner Denise Karstan and Dr. Lawrence Chin at Upstate University Health.

Plaintiff reports that she is unable to work because sitting up straight or holding her neck in a straight position for too long causes severe neck pain as well as headaches, nausea, and vomiting.  She has to either lie down or use something to prop up her neck to make the pain bearable.  She experiences headaches daily and they cause her to vomit multiple

times per day.  Plaintiff also reports having decreased feeling in her left

hand and arm, although her dominant right hand is unaffected.  She cannot

lift even a cup of coffee without it causing pressure on her neck, and she

can stand, walk or sit upright only for a few minutes at a time.  She

additionally has difficulties with balance and uses a cane when she needs

it.  Plaintiff takes ibuprofen and gabapentin daily, as well as tramadol when

her pain is unbearable, although they do not completely alleviate her pain

and unfortunately make her tired.  Plaintiff's daughter and friend do "ninety-

nine percent" of the household chores, including shopping.  Plaintiff likes to

read but she uses audiobooks now because she finds it too difficult to hold

a physical book with her left hand.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security

Act on May 5, 2017.  In support of that application, she alleged a disability

onset date of April 28, 2017, and claimed to be disabled based on left arm

paralysis, cervical radiculopathy, intervertebral disc disorder, and C3-C4

neck compression.  She was insured under Title II through December 31,

2021.

A hearing was conducted by video on January 15, 2019, by ALJ

Michael D. Burrichter, to address plaintiff's application.  ALJ Burrichter

issued an unfavorable decision on January 30, 2019.  That opinion became

a final determination of the agency on July 9, 2020, when the Social

Security Appeals Council ("Appeals Council") denied plaintiff's request for

review of the ALJ's decision.

> B.   The ALJ's Decision

In his decision, ALJ Burrichter applied the familiar, five-step

sequential test for determining disability.  At step one, he found that plaintiff

had not engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Burrichter found that plaintiff suffers from

severe impairments that impose more than minimal limitations on her ability

to perform basic work functions, including osteoarthritis and/or

degenerative disc disease of the cervical spine status post laminectomy

and fusion, left upper extremity carpal tunnel syndrome and neuropathy,

myelopathy, and myofascial pain or post-laminectomy syndrome.  At step

two, the ALJ found the plaintiff's additional impairments, including

degenerative disc disease of the lumbar spine, diverticulosis, history of

gastric bypass surgery and hysterectomy, bilateral adrenal hyperplasia,

hypertension, hyperlipidemia, thyroid nodule, vitamin D deficiency,

headaches, mild cognitive impairment and suggestions of a mental

impairment were all non-severe under the regulatory standards.

At step three, ALJ Burrichter examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 1.04, and 11.14.

ALJ Burrichter next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform less than a full range of sedentary work,[3] with the following limitations:

> she can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight hour workday. The claimant would require the use of an assistive device for ambulation, standing, and balance, but they would remain at the workstation on task and the opposite upper extremity could be used to lift and/or carry up to the exertional limitation. The

---

[3]     By regulation, sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

claimant should never climb ladders, ropes, and scaffolds, kneel, crouch, and crawl; and can occasionally climb ramps and stairs, balance, and stoop. The claimant can occasionally reach overhead and can frequently reach in all other directions, handle, finger, and feel with the nondominant left upper extremity. The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration.

At step four, ALJ Burrichter concluded that plaintiff has no past relevant work. Proceeding to step five, the ALJ consulted a vocational expert regarding how plaintiff's limitations impact the occupations she is capable of performing, and concluded based on the vocational expert's testimony that plaintiff remains able to perform available work in the national economy, citing as representative positions document preparer, callout operator, and semiconductor bonder. Based upon these findings, ALJ Burrichter concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on August 31, 2020.[4] In support of her challenge to the ALJ's determination, plaintiff raises several arguments,

---

[4]    This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

contending that (1) the ALJ failed to properly assess the opinion from treating neurosurgeon Dr. Lawrence Chin because the ALJ erroneously found that Dr. Chin had not cited support for his conclusions, ignored the fact that Dr. Chin reviewed and interpreted the objective imaging related to plaintiff's spine, and failed to note that his opinion is consistent with the similar opinion from consultative examiner Dr. Elke Lorensen; (2) the ALJ erred in relying on the opinions from nonexamining state agency physicians Dr. G. Feldman and Dr. Charles Lee, based upon his finding that those opinions were speculative and not consistent with the evidence; (3) the ALJ substituted his own lay judgment for that of the medical sources by adopting his own interpretation of the evidence over those of Dr. Chin and Dr. Lorensen, and in particular failing to adopt the greater reaching restrictions opined by those sources; and (4) the ALJ failed to properly assess plaintiff's subjective reports regarding her pain and functional limitations by misinterpreting Dr. Chin's opinion about lifting and carrying, failing to show what evidence supports his decision, and failing to consider plaintiff's positive work history.  Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on March 21, 2022, at which time decision was reserved.

III.   <u>DISCUSSION</u>

8

A.   <u>Scope of Review</u>

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

  B. <u>Disability Determination: The Five-Step Evaluation Process</u>

   The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

1.   The ALJ's Assessment of the Opinion Evidence

Because plaintiff's application for benefits was filed in May of 2017, the new, significantly amended regulations regarding the weighing of medical source opinion evidence apply to her claim.  Under those new

12

regulations, the Commissioner "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s), .

. . including those from your medical sources," but will rather consider

whether those opinions are persuasive by primarily considering whether the

opinions are supported by and consistent with the record in the case.  20

C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at

*5853 (stating that, in enacting the new regulations, the agency was

explicitly "not retaining the treating source rule").  An ALJ must articulate in

his or her determination how persuasive he or she finds all of the medical

opinions and explain how he or she considered the supportability[5] and

consistency[6] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also

may – but is not required to – explain how he or she considered the other

relevant enumerated factors related to the source's relationship with the

claimant, including the length of any treatment relationship, the frequency

of examinations by the source and the purpose and extent of the treatment

---

[5]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[6]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

relationship, whether the source had an examining relationship with the

claimant, whether the source specializes in an area of care, and any other

factors that are relevant to the persuasiveness of that source's opinion.  20

C.F.R. § 416.920c(c).

          a.    <u>Dr. Lawrence Chin</u>

Plaintiff first argues that the ALJ erred when weighing the opinion

from treating neurosurgeon Dr. Lawrence Chin, contending that (a) the ALJ

was incorrect when he stated that Dr. Chin did not provide any explanation

or citation to record evidence that supported his opinion, asserting that Dr.

Chin did in fact provide explanations for the opined limitations; (b) Dr.

Chin's opinion was based on his specialty as a neurosurgeon and his

review of plaintiff's objective imaging; and (c) the ALJ's finding that Dr.

Chin's opinion was not consistent with the evidence of record is erroneous

because it is consistent with the examination findings and opinions of the

consultative examiner.  Dkt. No. 13, at 14-17.  Plaintiff also generally

argues that the ALJ's characterization of examinations as showing

generally normal strength and sensation or full range of motion and not

revealing extreme motor or neurological deficits is an example of him

substituting his own lay interpretation of the medical evidence over that of

Dr. Chin, given that Dr. Chin interpreted these findings as being indicative

of severe restrictions.  *Id.* at 17-18.

In April 2018, Dr. Chin opined that plaintiff can lift and carry less than ten pounds, can stand and/or walk less than two hours in an eight hour workday in intervals of thirty minutes at a time with breaks to lie down for ten or fifteen minutes, requires use of a handheld assistive device when ambulating, can sit for less than six hours in an eight hour workday but must alternate between sitting and standing every thirty minutes, and is limited in her ability to push and pull with both her upper and lower extremities.  Administrative Transcript ("AT") at 581-82.[7]  As an explanation for these restrictions, Dr. Chin explained that "[plaintiff] is severely myelopathic, upper motor neuron testing positive, ambulation, coordination, balance, muscle strength of upper and lower extremities profoundly affected. Requires repeat surgery to correct and stabilize."  AT 582.  Dr. Chin further opined that plaintiff can never climb, balance, kneel, crouch, crawl or stoop, and is limited to an unspecified degree in her ability to reach in all directions, handle, finger and feel due to myelopathy, based on evidence of spinal cord injury "within the body of attached notes."  AT 582-83.  Dr. Chin additionally opined that plaintiff cannot maintain attention and

---

[7]     The Administrative Transcript is found at Dkt. No. 10, and will be cited as "AT __."

concentration throughout a workday due to being on pain medication.  AT 583.  Dr. Chin noted at the end of his opinion that "[plaintiff] has profound myelopathy and severely limited activities.  [Plaintiff] has been out of work prior to initial surgery."  AT 584.

The ALJ found Dr. Chin's opinion to be only partially persuasive because, although he had a substantial treating relationship with plaintiff, his opinion was not well supported by his own treatment notes, which did not "document any extreme motor or neurological deficits reasonably consistent with his conclusions, but instead often reflect the claimant's normal strength, sensation, and reflexes throughout both upper and lower extremities," he did not provide any explanation or citation to medical evidence to support his conclusions in his check-box form, and his opinion is inconsistent with the other substantial evidence in the record, including examinations showing that plaintiff exhibits good strength, sensation, and range of motion in the lower extremities and a normal or only mildly abnormal gait.  AT 17-18.

Although plaintiff is correct that, contrary to the ALJ's finding, Dr. Chin did indeed provide some written explanations on his medical source statement in an effort to support the opined limitations, and even directed the reader to his own treatment notes, such explanations do not

necessarily mean that Dr. Chin's opinion is well-supported.  As the ALJ notes, Dr. Chin's own treatment notes do not show the "profoundly affected" muscle strength, ambulation, coordination, or balance on which Dr. Chin purports to rely.  On March 22, 2018, Dr. Chin's nurse practitioner ("NP") Denise Karsten noted that plaintiff was currently using a cane for balance when needing to walk more than fifteen minutes, and observed that plaintiff was lying down with a sweater under her neck reportedly to relieve her pain; had decreased range of motion in her cervical spine; had numbness in her left hand and arm, full strength in her right upper extremity, 3/5 strength in her deltoid, bicep and tricep and full strength with wrist extension, wrist flexion and grip in her left upper extremity, and good range of motion in all extremities; she was able to perform toe and tandem walking and a single leg stand with only mild difficulty, her bilateral lower extremities were normal, and her gait was non-antalgic with only mild ataxia.  AT 576, 579.  On April 26, 2018, NP Karsten noted that plaintiff was again lying down, reportedly due to a headache, and plaintiff stated that she continued to have neck pain and numbness in her left arm, but that she now also had some decreased sensation over her right upper extremity and that she could stand or walk for thirty or forty minutes before needing to lie down due to neck pain.  AT 589.  On examination, NP Karsten

17

observed that plaintiff's neck was nontender with full range of motion, she was intact to light touch throughout her upper and lower extremities, she had full strength in her upper and lower extremities, and she displayed no ataxia in her upper extremities.  AT 590-91.

These two treatment notes, which I note are the only ones from Dr. Chin prepared prior to plaintiff's second cervical spinal surgery, do not show the level of limitation Dr. Chin opines.  Although one of those treatment notes does reflect some limited functioning related to plaintiff's neck, left upper extremity, and ability to ambulate, the ALJ was reasonable in finding that those abnormal findings were not as "extreme" as would support Dr. Chin's opined limitations, particularly as the second examination showed essentially normal findings even related to plaintiff's left upper extremity.  Contrary to plaintiff's argument, the ALJ did not improperly substitute his own lay opinion for that of Dr. Chin.  An ALJ is not required to accept a physician's after-the-fact statement regarding the severity of the findings in his treatment notes where a review of those same treatment notes clearly does not support the physician's statement.  *See Cristina M. v. Saul*, 18-CV-0332, 2019 WL 3321891, at *6 (N.D.N.Y. July 24, 2019) ("There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw

medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from only the latter.") (Hummel, M.J.). Notably, the ALJ did not take issue with Dr. Chin's interpretation of the objective imaging of plaintiff's cervical spine or ignore the fact that Dr. Chin assessed that plaintiff's condition was significant enough that she required further surgeries, but rather merely found that the objective findings documented in Dr. Chin's treatment notes were not of a level that supported the extremely limited functional assessment Dr. Chin provided.

I note, moreover, that Dr. Chin's opinion was rendered before plaintiff underwent her second cervical spinal surgery in August of 2018, and treatment notes from the subsequent time period also do not show objective findings that would support the level of restriction opined by Dr. Chin.  Plaintiff's second surgery was performed on August 3, 2018.  AT 641-44.  On August 14, 2018, NP Karsten noted that plaintiff reported her headaches were fifty percent less intense and less frequent after surgery, and the pain in her left arm was less intense.  AT 698.  NP Karsten observed that plaintiff had intact sensation to light touch throughout the upper and lower extremities, full strength in her lower extremities and right upper extremity, and, in her left upper extremity, strength measuring at 3+/5 in the deltoid and bicep, 4/5 in her tricep and with wrist extension, and

5/5 with grip and wrist flexion; her gait and coordination were noted to be at baseline and there was no ataxia in the upper extremities.  AT 700.

Plaintiff was again seen by NP Karsten on September 19, 2018, who, in her notes from that date, recorded that plaintiff reported her headaches were less intense and occurred only on average two times per week and she had only mild pain in her left arm.  AT 709.  NP Karsten observed her neck was still tender with limited range of motion while healing, while her other observations remained the same as at the previous visit.  AT 710-11.

At a follow up visit conducted by Physician's Assistant ("PA") Susan Stuck on October 11, 2018, it was noted plaintiff was doing well, and her headaches were much better, although the numbness in her left arm was unchanged.  AT 680.  PA Stuck observed that plaintiff's neck was still tender post-surgery, she had intact sensation to light touch throughout the upper and lower extremities, full strength in her lower extremities and right upper extremity, and, in her left upper extremity, strength measuring at 3+/5 in the deltoid and bicep, 4-/5 with grip, 4/5 in her tricep and with wrist extension, and 5/5 with wrist flexion; her gait and coordination were noted to be at baseline and unassisted.  AT 682.

It is also documented that plaintiff was scheduled to have a third surgery on January 4, 2019, to extend the previous fusion from C3-C4 to

C3-C5 for additional symptom relief.  AT 683, 714.  These post-surgery notes from Dr. Chin's practice therefore show some lingering strength deficit in plaintiff's left upper extremity, but are completely at odds with his opined limitations related to the need to lie down or the extreme limitations in the ability to stand, walk, sit, or perform postural maneuvers because they do not document significant ongoing issues related to plaintiff's lower extremities, gait, coordination, or balance.  Overall, although Dr. Chin did provide some explanation for his opinion, the ALJ's rejection of that explanation as itself being inconsistent with what Dr. Chin's treatment notes actually document in terms of objective physical findings is supported by substantial evidence.

Similarly, I find that the ALJ's conclusion that Dr. Chin's opinion is not wholly consistent with the other evidence in the record to be supported by substantial evidence.  In support of her argument, plaintiff points to the examination and opinion from consultative examiner Dr. Lorensen.  Although Dr. Lorensen's examination does, as the ALJ acknowledged, show significant evidence of limitation in plaintiff's ability to ambulate, use her left upper extremity, and perform postural maneuvers, the ALJ also correctly noted that this examination was conducted only three weeks after plaintiff's first cervical spinal surgery, and the resulting findings are

therefore not representative of plaintiff's functioning for most of the relevant period.  Dr. Lorensen's examination findings are not even consistent with other examinations from the same time period.  Treatment notes from May 2017 show that, although she had continuing left upper extremity numbness following her first cervical spinal surgery, she retained full or almost full strength in her upper extremities, full strength in her lower extremities and generally intact sensation, though she was noted on May 24, 2017, to have poor dynamic balance and an unsteady gait.  AT 426-27, 436, 570.  On June 22, 2017, it was observed that she had normal neck muscle tone with no instability or tenderness and physiologic range of motion, 5/5 motor strength in her upper and lower extremities, intact sensation in all extremities, normal heel-toe and tandem walk, although she reported continued numbness in her left arm except for some improvement in one of her fingers.  AT 536-37.  Throughout the remainder of 2017 through July 2018, she was generally noted to have 4+/5 strength in her left upper extremity – although on at least one occasion, it was assessed as 3/5 – with no tenderness in her cervical spine, decreased sensation in her left arm, normal or mildly affected gait or balance and use of a cane, and some decrease in cervical range of motion.  *See e.g.*, AT 541, 545, 549, 554, 558, 566, 568, 613, 654, 660, 666.

A pre-surgical examination from August 3, 2018, conducted by a physician at Upstate Brain and Spine Center, showed normal strength in the upper and lower extremities.  AT 637-38, 649.  On August 15, 2018, it was observed that plaintiff had a stable gait and continuing left arm numbness, although her reported symptoms in her right arm had improved after her second surgery.  AT 672-73.  In sum, the treatment records as a whole support the ALJ's conclusion that the extent of the limitations opined by Dr. Chin were not consistent with the medical evidence, and that plaintiff's observable functioning improved to a great extent after Dr. Lorensen conducted her examination.

Because the ALJ appropriately assessed the supportability and consistency of Dr. Chin's opinion, and because those findings are generally supported by substantial evidence, I find that plaintiff's argument on this issue must be rejected.

b.    <u>Dr. Elke Lorensen</u>

Plaintiff argues that the ALJ failed to properly adopt the full extent of the limitations opined by Dr. Lorensen, contending in particular that the ALJ's notation that the record documented significant improvement is not supported by the evidence and is at odds with the fact that plaintiff required two additional surgeries after Dr. Lorensen's opinion was rendered.  Dkt.

No. 13, at 22.

On June 7, 2017, Dr. Lorensen opined that plaintiff has moderate-to-marked limitations in her ability to stand, ambulate, push and pull with her left arm, reach with her left arm, and handle small objects with her left hand, should avoid heights and operating machinery, and that use of an assistive device is medically necessary.  AT 472.

The ALJ found the opinion of consultative examiner Dr. Lorensen to be significantly persuasive because she had the opportunity to examine plaintiff, her opinion was supported by her detailed report documenting her examination findings, and her opinion is generally consistent with the evidence in the record, although the record does document that plaintiff's condition improved significantly with regard to her ability to ambulate and use a cane only when walking for longer periods.  AT 18.

As was previously discussed in relation to Dr. Chin's opinion, the treatment record as a whole supports the ALJ's conclusion that plaintiff's functional abilities improved as plaintiff healed from her first surgery, such that Dr. Lorensen's opinion and examination findings are not wholly representative of plaintiff's functional abilities related to ambulation in particular.  The fact that plaintiff underwent two additional surgeries does not undermine this conclusion.  The record documents that the second

24

surgery was intended to correct mistakes made by the surgeon who performed her first surgery that caused plaintiff to suffer headaches and other symptoms, symptoms which, with the exception of her left arm numbness, improved to a large extent after the second surgery.  The evidence from between the first and third surgeries, as was already discussed, showed overall improvement despite lingering symptoms of left arm numbness and weakness, occasional headaches, and pain and limited range of motion in her neck.  The fact that plaintiff continued to experience some limitations did not require the ALJ to adopt the full extent of Dr. Lorensen's opinion given the noted improvement reflected in the record. For these reasons, I find that plaintiff's argument on this issue must be rejected.

### c.   Dr. G. Feldman and Dr. Charles Lee

Plaintiff argues that the ALJ erred in relying at all on the opinions from Dr. Feldman and Dr. Lee, two non-examining consultants, contending that their opinions that plaintiff would retain the capacity to perform sedentary work within twelve months after her alleged onset date is "not evidence of the Plaintiff's abilities supported by medical findings, but a prediction," is not based on the full record, and is not even consistent with the evidence that was considered by those sources.  Dkt. No. 13, at 16, 21-

22.

On June 16, 2017, Dr. Feldman indicated that plaintiff had undergone her first cervical spine surgery one month prior and noted that the evidence showed that "she presents with marked exertional limitations and inability to effectively ambulate, as well as limitations with use of [her] left hand.  AT 519-20.  Dr. Feldman concluded that although "[i]t is unlikely that claimant will be able to return to her work of 17 years as a waitress within 12 months of onset," "12 months after onset, she should retain the capacity for sedentary work."  AT 520.

On February 3, 2018, Dr. Lee reviewed updated evidence that had been added to the record after Dr. Feldman conducted his review, and concluded that such newer evidence did not suggest a need to change the RFC opined by Dr. Feldman because it showed that plaintiff "continues to improve after surgery."  AT 560-61.

The ALJ found that these two opinions were partially persuasive because their conclusion that plaintiff would be able to perform sedentary work within twelve months of her alleged onset date was based on a comprehensive review of the record, supported by a detailed narrative explaining what evidence they relied on in reaching their conclusion, and consistent with the evidence in the record that generally documents

progressive improvement in plaintiff's functioning.  AT 17-18.  The ALJ did, however, find that they were not wholly persuasive because the record showed "intermittent signs of weakness and numbness in the left upper extremity" that merited additional postural, manipulative, and environmental limitations.  AT 18.

Although plaintiff is surely correct that Dr. Feldman's opinion was speculative by nature, Dr. Lee, who affirmed that opinion for an ability to perform sedentary work, had the benefit of being able to review a significant body of treatment records, including for a substantial period after plaintiff had recovered from her first surgery.  His opinion was therefore not based on mere speculation, but on the evidence.  As has already been discussed, the treatment evidence shows that plaintiff's ability to stand or ambulate with a cane improved significantly with the passage of time after her first surgery, and the only evidence to support a limitation in plaintiff's ability to sit, as required for sedentary work, is plaintiff's own subjective reports regarding neck pain and headaches.  However, the record shows that plaintiff's headaches improved significantly in both frequency and intensity following her second surgery and the ALJ found that plaintiff's subjective reports were not wholly consistent with the record as a whole, which, for reasons that will be discussed in another section of this decision,

is a finding supported by substantial evidence.  The ALJ also

acknowledged that these opinions did not account for the full range of

limitations shown by the record, and therefore found that plaintiff was

limited to an even greater extent than opined by Dr. Feldman and Dr. Lee.

Because the ALJ's assessment of these opinion is generally supported by

substantial evidence, I find that plaintiff's arguments on this issue must be

rejected.

### 2.    The ALJ's Assessment of the RFC

Plaintiff next argues that the ALJ's assessment of the RFC is

erroneous because of the aforementioned alleged errors related to

weighing the opinion evidence, and specifically focuses on the ALJ's

assessment of her ability to reach.  Dkt. No. 13, at 20-22.  In his RFC

determination, the ALJ found that plaintiff can use her left upper extremity

to occasionally reach overhead and frequently reach in all other directions.

AT 14.  Plaintiff argues that this finding is not based on any medical

opinion, given that Dr. Chin opined that plaintiff is limited in her ability to

reach in all directions, and Dr. Lorensen opined that she has "marked"

limitations for reaching with her left upper extremity.  *Id.* at 22.

As was already discussed, the ALJ did not err when choosing to

reject certain opinion evidence that was not consistent with or supported by

the relevant evidence.  Additionally, plaintiff's argument regarding her

ability to reach falls short of being persuasive for multiple reasons.  Firstly,

although plaintiff points to Dr. Chin's opinion as proof that she is more

limited in this respect, Dr. Chin did not specify to what extent plaintiff was

limited in her ability to reach, handle, finger, or feel.  AT 583 (checking

boxes to indicate that all of these actions were "limited" but leaving blank

the section where the degree of limitations was to be specified).  It is

therefore not even apparent that Dr. Chin's opinion is inconsistent with the

ALJ's RFC finding in terms of ability to reach, hand, or finger.  As to Dr.

Lorensen's opinion regarding use of the upper left extremity, while plaintiff

argues that Dr. Lorensen found that plaintiff is markedly limited in her ability

to reach with her left arm, Dr. Lorensen actually found a *moderate-to-*

*marked* limitation in this regard.  AT 472.  The ALJ noted that Dr.

Lorensen's use of terms like "moderate" and marked" without providing a

definition for those terms was vague, but ultimately found it persuasive to

the extent it showed the existence of manipulative and other limitations.  AT

18.  Based on the evidence that, as was already discussed, generally

showed normal range of motion in the upper extremities, at worst 3/5 motor

strength in some muscles of plaintiff's left arm, generally 4/5 or 5/5 grip

strength, some limited neck range of motion, and persistent loss of

sensation in portions of her left arm, I find that the ALJ's limitation of plaintiff to occasional overhead reaching and frequent reaching, handling, and fingering with her left upper extremity is supported by substantial evidence, particularly in light of the degree of improvement in some of plaintiff's symptoms after she had time to heal from her first surgery, and then again after her second surgery.[8]

The fact that there is not a medical opinion that stated the specific limitations included by the ALJ in the RFC finding does not render that RFC unsupported.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (finding that, where the ALJ is able to consider the evidence in the record and there is no gap in the record that would prevent him or her from coming to a conclusion regarding the claimant's RFC, there is no requirement that there be a medical opinion outlining the specific limitations found in the RFC for that finding to be supported by substantial evidence); *see also Sarah C. v. Comm'r of Soc. Sec.*, 19-CV-1431, 2021 WL 1175072, at *15 (N.D.N.Y. Mar. 29, 2021) (Scullin, J.) (stating that "an ALJ's RFC

---

[8]     Notably, although Dr. Lorensen observed that plaintiff had no hand or finger dexterity on her examination, she also observed that plaintiff had only 2/5 grip strength at that time.  AT 471.  As was already noted, plaintiff's grip strength later improved to the point where it was generally 4/5 or even 5/5.  Therefore, the ALJ's citation to improvement in plaintiff's ability to use her left hand provides support for his finding that plaintiff was less limited in her abilities to handle and finger than otherwise suggested by Dr. Lorensen's opinion.

finding does not need to match one single medical opinion perfectly, but rather it must be supported by the record as a whole") (citing *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013)).  Indeed, it was the plaintiff's burden to prove that she is disabled, and she has not pointed to evidence, other than that which was discounted to some extent by the ALJ for valid reasons, which shows that she was more significantly limited, particularly in her abilities to reach, handle, or finger with her upper left extremity, such that a reasonable person would have to conclude contrary to the ALJ's findings.  *See Brenden R. v. Comm'r of Soc. Sec.*, 20-CV-0821, 2021 WL 5965164, at *6 (N.D.N.Y. Dec. 15, 2021) (Hurd, J.) (noting that "[t]he burden is on plaintiff to show that the record evidence demands a more restrictive RFC"); *Warren v. Comm'r of Soc. Sec.*, 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) (Carter, M.J.) (noting that it is not enough for the plaintiff to point to evidence that supports his or her position because it is not the function of the court to reweigh the evidence or determine whether the claimant is disabled, but rather the court must uphold the ALJ's decision so long as it applies the relevant law and there is substantial evidence in the record to support it).

Undeniably, there is somewhat conflicting evidence in the record regarding plaintiff's ability to feel with her left upper extremity.  Although

there are admittedly many treatment notes throughout the record in which it

is documented in a general manner that plaintiff had intact sensation in all

four extremities, there are also many notations that, as to her left arm

specifically, she continued to have decreased sensation or numbness even

after her second surgery.  *Compare* AT 420, 436, 537, 545, 570, 591 *with*

AT 476, 537, 558, 568, 575, 579, 613, 654, 660, 672.  On August 15, 2018,

plaintiff reported to another provider that Dr. Chin informed her that she

would likely continue to have neuropathy in her left arm for the rest of her

life.  AT 673.  The ALJ acknowledged these differing findings throughout

the record, including that plaintiff's left arm numbness had not improved

much from surgery.  AT 17.  Although the ALJ explained his finding

regarding why the evidence as a whole does not support the alleged

degree of limitations in the ability to reach or lift, the ALJ did not indicate

how he weighed the evidence regarding plaintiff's loss of sensation and

numbness to come to the conclusion that plaintiff could frequently feel.  AT

17.  However, any error the ALJ committed in failing to explain the basis for

his finding regarding plaintiff's ability to feel in particular is necessarily

harmless, as a review of the Selected Characteristics of Occupations'

entries for the three jobs identified by the vocational expert reveals that

none of those jobs require feeling as an essential attribute of work

performance.  *See Selected Characteristics of Occupations in the Dictionary of Occupational Titles*; *see also Michael C. v. Comm'r of Soc. Sec.*, 18-CV-1115, 2019 WL 7293683, at *8 (N.D.N.Y. Dec. 30, 2019) (Baxter, M.J.) (finding any error at step five harmless because both the Dictionary of Occupational Titles and Selected Characteristics of Occupations indicated that the identified jobs did not require the functions in contention and therefore the alleged error would not have affected the ALJ's ultimate determination).

Based on the foregoing, I find that plaintiff's arguments on this issue must be rejected.[9]

### 3.   The Evaluation of Plaintiff's Subjective Complaints

In her final point, plaintiff argues that the ALJ erred in failing to adequately assess her subjective reports of her pain and other symptoms. Dkt. No. 13, at 23-24.  In particular, she argues that (a) the ALJ erred in finding her testimony that Dr. Chin limited her to lifting three pounds was inconsistent with Dr. Chin's opinion because Dr. Chin opined she could lift

---

[9]      At the hearing, plaintiff raised, for the first time, an argument that the ALJ should have considered whether plaintiff qualified for a closed period of disability between her various surgeries.  However, because this argument was not raised in plaintiff's brief, I find that it has been waived.  I also find that, in the alternative, the ALJ's discussion of the evidence makes clear that he found, albeit implicitly, that no such closed period was warranted.  Indeed, in that discussion, the ALJ stated that, "[c]ontrary to her testimony and allegations of disability, the objective evidence documents substantial improvement in the claimant's functioning within 12 months of the alleged onset date."  AT 16.

and carry only "less than ten pounds,"  (b) the ALJ's finding that the objective medical evidence did not support plaintiff's allegations is inconsistent with the fact that plaintiff had four neck surgeries to address her symptoms, and (c) there is no indication that the ALJ considered plaintiff's lengthy work history as a waitress.  *Id.*

It is well-established that an ALJ must take into account subjective complaints in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  However, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Marcus*).  If the claimant's testimony concerning the intensity, persistence or limiting effects associated with his or her impairments is not fully supported by clinical evidence, then the ALJ must consider additional factors in order to assess that testimony, including (1) daily activities, (2) location, duration, frequency and intensity of symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of any medications taken, (5) other treatment received, and (6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

If the ALJ finds that a claimant's subjective testimony should be

rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, so long as it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision"). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

Plaintiff first argues that the ALJ erred in failing to credit her subjective reports of symptoms based on her testimony at the hearing that Dr. Chin limited her lifting only three pounds because he found it to be

inconsistent with Dr. Chin's opinion.  However, the ALJ is correct that Dr. Chin opined that plaintiff could lift and carry "less than ten pounds."  AT 581.  Although three pounds is certainly less than ten pounds, plaintiff's testimony appears to imply that she was told she cannot lift more than three pounds, while Dr. Chin's opinion indicates that plaintiff could conceivably lift and carry more than that, but less than ten pounds.  I therefore find no error in the ALJ's pointing out of this inconsistency.

Plaintiff next argues that the ALJ erred in finding that her subjective reports are inconsistent with the objective medical or other evidence simply based on the fact that she underwent multiple surgeries on her cervical spine.  However, the fact that plaintiff had surgery, even multiple surgeries, does not by itself prove that her subjective reports are consistent with the evidence as a whole, particularly, as the ALJ explicitly noted, the medical evidence shows that plaintiff experienced some improvement in her symptoms as a result of these surgeries.

As to plaintiff's argument that there is no indication that the ALJ considered her work history in assessing whether he should credit her subjective reports, I note that this argument appears to represent a remnant of when the agency assessed a claimant's "credibility," a standard that is no longer in use.  Under the current regulations, the relevant inquiry

is not based upon whether the claimant is credible, but rather whether his or her subjective reports are consistent with the other evidence, which, granted, can be a subtle distinction in many respects, but one in which the Agency made clear that it is no longer assessing whether the claimant has an overall character for truthfulness.  Whether the claimant, in the past, had a stellar work history or was unemployed no longer has much reasonable utility in this assessment because it ultimately speaks to the claimant's work ethic in the past as opposed to whether his or her symptoms during the relevant period are consistent with the other evidence.  *See* Social Security Ruling ("SSR") 16-3p; *see Blair v. Colvin*, 16-CV-5983, 2017 WL 4339481, at *6 (S.D.N.Y. May 15, 2017) (finding that it was error for the ALJ to adversely consider the claimant's work history and statements about her intent concerning work under SSR 16-3p because, under that new policy, "subjective symptom evaluation is not an examination of an individual's character" and the ALJ should only consider the relevant factors for assessing the intensity, persistence, and limiting effects of the claimant's symptoms during the relevant time).  Nonetheless, plaintiff has not identified how her history of working typically one day per week before her alleged disability onset date is indicative of a work history that would tend to support her application or would otherwise have altered the ALJ's

37

conclusion related to her subjective reports.

Lastly, although plaintiff challenges specific reasons provided by the ALJ for not wholly crediting plaintiff's subjective reports, the ALJ has offered other reasons that plaintiff has not challenged. Specifically, plaintiff has not directly challenged the ALJ's citation to the objective medical evidence other than related to that fact that she required multiple surgeries, and I find that the objective medical evidence does indeed provide a valid basis for supporting the ALJ's finding for many of the reasons that were already discussed in relation to other arguments. Plaintiff also did not challenge the ALJ's finding that plaintiff's reported level of pain is not wholly supported because the record shows that she took tramadol only occasionally, or his notation that her reports of her abilities to sit, stand, and walk are inconsistent with statements she made to her treating providers. All of these reasons provide additional support for the ALJ's finding.

In sum, I find that the ALJ properly evaluated plaintiff's subjective reports of symptomology and the resulting findings are supported by substantial evidence.[10]

---

[10]     Plaintiff argued also that her reports of pain should have been accommodated in the RFC, specifically in the form of a restriction related to remaining on-task or attending on a regular basis. However, plaintiff has not furnished the requisite evidence to prove that the ALJ was required to consider or include such a restriction. Specifically, although Dr. Chin indicated in his medical source statement that plaintiff did not retain the ability to maintain attention and concentration because her abilities in that respect

IV.   <u>SUMMARY AND ORDER</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:   March 23, 2022
         Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge

---

were significantly compromised by her pain and usage of pain medication, the ALJ properly rejected this opinion, and his finding regarding plaintiff's subjective reports of pain is also supported by substantial evidence.  AT 583.  I therefore find that plaintiff has not met her burden to prove that a limitation related to any effect of pain or pain medication on her ability to attend or concentrate was warranted.